IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THOMAS T. PROUSALIS, JR.,

      Petitioner,

v.                                    Civil Action No. **3:12CV134**

CHARLES E. MOORE,

      Respondent.

## MEMORANDUM OPINION

Thomas T. Prousalis, Jr., a former federal inmate now serving a term of supervised release, submitted a 28 U.S.C. § 2241[1] petition ("2241 Petition") challenging his conviction and sentence imposed by the United States District Court for the Southern District of New York ("Sentencing Court"). The matter is before the Court on Respondent's Motion to Dismiss. A proper understanding of Prousalis's § 2241 Petition requires extensive recitation of Prousalis's prior criminal proceedings. Nevertheless, Prousalis's underlying assertion, that he can utilize § 2241 to challenge his conviction, plainly lacks merit. For the reasons stated below, the Motion to Dismiss will be GRANTED.

---

[1] That statute provides, in pertinent part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—
    (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
    (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
    (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(c)(1)–(3).

### I.    MOTIONS UNDER 28 U.S.C. § 2255 COMPARED
### TO PETITIONS UNDER 28 U.S.C. § 2241

A motion pursuant to 28 U.S.C. § 2255 provides the primary means of collateral attack on the imposition of a federal conviction and sentence and must be filed with the sentencing court. *See Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990)); *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997) (citing cases). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricted the jurisdiction of the district courts to hear second or successive applications for federal habeas corpus relief by prisoners attacking the validity of their convictions and sentences by establishing a "'gatekeeping' mechanism." *Felker v. Turpin*, 518 U.S. 651, 657 (1996).[2]  Specifically, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).[3]

A federal inmate may not proceed under 28 U.S.C. § 2241 unless he or she demonstrates that the remedy afforded by 28 U.S.C. § 2255 "is inadequate or ineffective to test the legality of

---

[2] The Sentencing Court already has denied a 28 U.S.C. § 2255 motion filed by Prousalis. *Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR. 1509, 2007 WL 2438422, at *1 (S.D.N.Y. Aug. 24, 2007)

[3] An inmate may not file a second or successive § 2255 motion, unless a panel of the appropriate Court of Appeals certifies that the motion contains:

> **(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> **(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

2

his detention." 28 U.S.C. § 2255(e).[4]  For example, "attacks on the execution of a sentence are

properly raised in a § 2241 petition." *In re Vial*, 115 F.3d at 1194 n.5 (citing *Bradshaw v. Story*,

86 F.3d 164, 166 (10th Cir. 1996); *Hanahan v. Luther*, 693 F.2d 629, 632 n.1 (7th Cir. 1982)).[5]

Nevertheless, the United States Court of Appeals for the Fourth Circuit has emphasized that "the

remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an

individual has been unable to obtain relief under that provision or because an individual is

procedurally barred from filing a § 2255 motion." *Id.* (internal citations omitted).

The Fourth Circuit has stressed that an inmate may proceed under § 2241 to challenge his

conviction "in only very limited circumstances." *United States v. Poole*, 531 F.3d 263, 269 (4th

Cir. 2008) (internal quotation marks omitted).  The "controlling test," *id.*, in the Fourth Circuit is

as follows:

> [Section] 2255 is inadequate and ineffective to test the legality of a conviction
> when:  (1) at the time of conviction, settled law of this circuit or the Supreme
> Court established the legality of the conviction; (2) subsequent to the prisoner's
> direct appeal and first § 2255 motion, the substantive law changed such that the
> conduct of which the prisoner was convicted is deemed not to be criminal; and
> (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the
> new rule is not one of constitutional law.

*In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000).  The Fourth Circuit formulated this test to

provide a remedy for the "fundamental defect presented by a situation in which an *individual is*

---

[4] This statute provides, in pertinent part, that "[a]n application for a writ of habeas corpus
in behalf of a prisoner who is authorized to apply for relief [under 28 U.S.C. § 2241], shall not be
entertained . . . unless it also appears that the remedy [under 28 U.S.C. § 2255] is inadequate or
ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).  "This 'inadequate and
ineffective' exception is known as the 'savings clause' to [the] limitations imposed by § 2255."
*Wilson v. Wilson*, No. 1:11cv645 (TSE/TCB), 2012 WL 1245671, at *3 (E.D. Va. Apr. 12, 2012)
(quoting *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000)).

[5] A petition for a writ of habeas corpus under 28 U.S.C. § 2241 should be filed in the
jurisdiction where the inmate is incarcerated.  *See* 28 U.S.C. § 2241(a).

*incarcerated for conduct that is not criminal* but, through no fault of his [or her] own, [he or she] has no source of redress." *Id.* at 333 n.3 (emphasis added).

Prousalis fails to satisfy the second prong of *In re Jones*, 226 F.3d at 334. Specifically, Prousalis fails to demonstrate that "subsequent to [his] direct appeal and [his] first § 2255 motion, the substantive law changed such that the conduct of which [he] *was convicted is deemed not to be criminal.*" *Id.* at 333 (emphasis added). As explained below, all the conduct of which Prousalis stands convicted remains criminal.

## II.   PROCEDURAL HISTORY

### A.   Prousalis's Criminal Conduct

Prousalis pleaded guilty,[6] and the Sentencing Court adjudged him guilty, of conspiracy to commit securities fraud, wire fraud, and mail fraud, in violation of 15 U.S.C. §§ 78j(b)[7] and 78ff,[8] and 18 U.S.C. §§ 371,[9] 1341,[10] 1343,[11] and 1346[12] (Count One), aiding and abetting

---

[6] Prousalis pled guilty midtrial after eight witnesses testified against him. *Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR. 1509, 2007 WL 2438422, at *3–4 (S.D.N.Y. Aug. 24, 2007).

[7] The statute provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe . . . ."

15 U.S.C. § 78j(b).

[8] The statute provides penalties for willful violations based on false and misleading statements, and states in relevant part:

> Any person who willfully violates any provision of this chapter . . . or any person who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this chapter or any rule or regulation thereunder or any undertaking contained in a registration

4

securities fraud by making and causing to be made materially false statements in the registration materials filed with the SEC, including the registration statement and prospectus, in connection with the Busybox initial public offering ("IPO"), in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 CFR § 240.10b–5,[13] and 18 U.S.C. § 2[14] (Count Two), and aiding and abetting failure to disclose

---

statement . . . which statement was false or misleading with respect to any material fact shall upon conviction [be subject to certain enumerated penalties.]

15 U.S.C. § 78ff(a).

[9] The statute provides, in relevant part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

[10] The statute provides, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud . . . for the purpose of executing such scheme or artifice or attempting so to do . . . causes to be delivered by mail . . . any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

[11] The statute provides, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

[12] The statute provides that, "'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

[13] The regulation provides:

his interest as counsel in the registration materials filed with the Securities and Exchange

Commission ("SEC"),[15] in violation of 15 U.S.C. § 77x,[16] 17 C.F.R. 228.509,[17] and 18 U.S.C. §

---

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 ("Rule 10b–5").

[14] That statute provides:

> **(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> **(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

[15]   "Prousalis failed to disclose in the Busybox registration materials that Prousalis's legal fee was contingent on the [initial public offering ("IPO") of Busybox] closing and that he received [his] fees in Busybox securities." *Prousalis*, 2007 WL 2438422, at *2.

[16] The Judgment states that Prousalis pled guilty to violating "15 USC § 77xx." (Mem. Supp. § 2241 Pet. Ex. 17, at 1.)  However, the statute the United States charged Prousalis under and to which he pled guilty is 15 U.S.C. § 77x, as listed in his plea agreement and the Superseding Indictment.  The statute provides, in relevant part:

> Any person who willfully violates any of the provisions of this subchapter, or the rules and regulations promulgated by the [SEC], or any person who willfully, in a registration statement filed under this subchapter, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $10,000 or imprisoned not more than five years, or both.

15 U.S.C. § 77x.

2 (Count Three).   Prousalis pursued an unsuccessful direct appeal and a 28 U.S.C. § 2255

motion. *Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR. 1509, 2007 WL 2438422,

at *1 (S.D.N.Y. Aug. 24, 2007) (denying § 2255 motion).

The Sentencing Court, in its Opinion and Order dismissing Prousalis's § 2255 Motion,

recounted Prousalis's criminal proceedings in great detail "[b]ecause Prousalis's petition raised

so many points that flatly contradict the record in this case." *Id.* For similar prudential reasons,

this Court also recites these proceedings here:

> The [original[18]] indictment charged that Prousalis, who held himself out as a
> securities law expert for small companies that needed capital, served as outside
> counsel to busybox.com Inc. ("Busybox").  Working with Kirk, a principal in the
> investment banking firm Barron Chase Securities Inc. ("Barron Chase"), Prousalis
> made materially false statements orally and in writing in connection with an initial
> public offering ("IPO") for Busybox in the year 2000.  Kirk had pleaded guilty on
> December 30, 2003, to an information.
>       As charged in the indictment, the false statements in connection with the
> IPO included the nature of the underwriting agreement between Barron Chase and
> Busybox, the use of proceeds from the IPO, and the fees paid to Prousalis in
> connection with the IPO.  While the registration materials for the IPO described
> the IPO as a firm commitment underwriting, Barron Chase was either unable or
> unwilling to underwrite the IPO on that basis.  With a shortfall of over $2 million,
> Prousalis and others agreed to use IPO proceeds to pay Prousalis's fee and to
> purchase IPO shares on behalf of Busybox officers and directors, which would

---

[17] In 2000, the regulation, entitled "Interest of Named Experts and Counsel," provided:

> If . . . "counsel" was hired on a contingent basis, will receive a direct or
> indirect interest in the small business issuer or was a promoter, underwriter,
> voting trustee, director, officer, or employee, of the small business issuer, describe
> the contingent basis, interest, or connection.
>       . . . .
> (b)   Counsel—is counsel named in the prospectus as having given an
> opinion on the validity of the securities being registered or upon other legal
> matters concerning the registration or offering of the securities.

17 C.F.R. § 228.509 (2000).

[18] A Superseding Indictment filed May 10, 2004 added Count Three.  *Prousalis*, 2007
WL 2438422, at *2.

then be paid to them as salaries or future bonuses. This use of IPO proceeds was not disclosed in the registration materials for the IPO. Prousalis falsely represented to Busybox that an SEC examiner had confirmed to him that this arrangement was proper. Prousalis also knew that if his fee had been properly disclosed in the registration materials that Busybox would not have qualified for listing on the NSADAQ [sic] exchange since the disclosure would have revealed that the company did not have sufficient net tangible assets.

As a result of the scheme, over 2.5 million shares were sold at $5 per share. Prousalis earned approximately $1.2 million. The IPO occurred in May 2000, but by April 2001, Busybox was delisted by the NASDAQ and by July 2001, Busybox had filed for bankruptcy. While the officers of Busybox who received IPO shares did not sell them, Prousalis sold his shares in September 2000 for approximately $750,000.

*Id.* at *1.

The Sentencing Court provided the following summary of Prousalis's acknowledgment of his guilt:

> In his allocution Prousalis admitted knowing by mid-June 2000 that Barron Chase was "backing out of a firm commitment IPO." According to Prousalis, Barron Chase told him that the only way to close the IPO was to use Prousalis's legal fees and the officers' salaries and bonuses to make up a $2.5 million shortfall in the IPO. Prousalis created a bill in the amount of $1.25 million, which combined with salaries and bonuses for the officers, made up the IPO shortfall. He explained that he did not file an amendment to the registration statement reflecting the manner in which the additional $2.5 million was created to complete the IPO. Prousalis continued, "I did not disclose the true terms with my retainer agreement in the registration statement filed with the SEC and I listed my fee as $375,000 and omitted the full 7.5% fee and omitted from the prospectus that I would have been paid nothing had the IPO not . . . successfully closed." Prousalis admitted that the failures to disclose the 7.5% fee and its contingent nature in the registration statement were both material to investors. Prousalis answered yes, when asked whether he understood that the failure to disclose the recirculation of IPO proceeds was also a material omission. Prousalis admitted that he had omitted disclosure of the 7.5% term of his retainer agreement because he understood that Busybox would not be listed on the NASDAQ if that fact were disclosed. For this same reason, he hid the fact that $2.5 million of the IPO proceeds had been used to pay officers and him. Prousalis specifically admitted that at the time he did each of these acts he knew he was doing something wrong, knew he was acting in violation of the law, and was acting with the intent to deceive and defraud investors in Busybox securities.

*Id.* at *5 (omission in original). The Sentencing Court further summarized the trial evidence as

follows:

> [Busybox] was a small company that had very modest positive cash flow and that wasn't looking for much in terms of an initial investment from somebody. It wasn't asking to go public. It wasn't seeking to do an IPO. What they wanted to do was raise just several hundred thousand dollars, and what happened is . . . they got introduced to the defendant and [his associate] Mr. Grotto, and before you know it, what was being talked about was an IPO with a minimum of $10 million.
>
> And then, at the defendant's urging, . . . a CEO and a CFO were put in place in the company at exorbitant salaries . . . and those salaries alone changed the situation from one with a positive cash flow into a company that couldn't carry the salary burden that was imposed upon it.
>
> These two people who were friends of Mr. Prousalis and colleagues of his, the CEO and CFO, were installed in offices on the East Coast when the company was operating on the West Coast and, as far as I could tell, had no role in the company except to provide a level of control over this IPO process.
>
>     . . . .
>
> [T]he company wanted to get a small cash infusion, and the defendant dangled in front of the company large sums of money through an IPO and got their agreement to something that they themselves had not been seeking to do.
>
> Then there was a year-long process here, not [the defendant] succumbing to pressure at the end . . . . [I]n his very first draft of the registration statement, [the defendant] misdescribed his retainer agreement, and Mr. Bloodworth . . . corrected it to describe it accurately in the registration statement. The defendant took out the insertion, and they did that several times.
>
> Finally, they had a conversation about it, in which the defendant assured Mr. Bloodworth that the change he was making in the omissions from the registration statement [was] fine and he would speak to the SEC about the issue and confirmed it was okay to leave out a correct description of the compensation and the fact that it was a contingent fee structure.
>
> Then when it comes towards the end, a year later, towards the end of the proceeding . . . the defendant knew long before the insiders in the company that this wasn't going to be effectively a firm commitment underwriting and that they were going to need cash that they hadn't been able to raise and that the solution was this recycling of proceeds in a misleading way, to paint a very different picture of how the IPO was operating.
>
> His endeavor in this regard lasted weeks if not a month, and it was only sort of when the IPO happened, at least the company thought [the IPO had happened], and they were thrilled, and then the news is dumped on them like a ton of bricks that no, it didn't really happen, there wasn't a firm commitment underwriting, that Barron Chase wouldn't be taking the risk here of selling all the shares and we had to engage in this maneuver.
>
> So it wasn't a matter of Mr. Prousalis succumbing to pressure from outside, but it was a matter of him designing something from the beginning, something that he knew if he were honest with the SEC, it would never have passed muster; something he knew if he was honest with the NASDAQ about, it

would never have passed muster; and something that investors, if it were accurately-described, it would have been material to them, and they wouldn't have lost their money as they did, or at least they clearly wouldn't have been at risk because they wouldn't have invested.

No one from the company forced [the defendant] to design these maneuvers. No one from the company forced him or asked him or encouraged him to write a misleading registration statement. No one from the company suggested or asked him or encouraged him to lie about conversations he was having with the SEC.

*Id.* at 6–7 (alterations, other than first alteration in original; omissions, other than fifth omission, in original).

### B.    The Instant § 2241 Petition

Prousalis's § 2241 Petition reflects another futile attempt by Prousalis to minimize his guilt despite an overwhelming factual basis for his guilty plea. Prousalis relies on *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) (hereinafter "*Janus*"), to argue that his conduct of conviction is no longer criminal. As discussed at greater length below, *see infra* Part III, in *Janus*, the Supreme Court addressed whether an investment adviser "can be held liable in a *private action* under Rule 10b–5 [17 C.F.R. § 240.10b–5] for false statements included in . . . prospectuses." 131 S. Ct. at 2301 (emphasis added). The Supreme Court concluded that civil liability extends only to the maker of such statements. The Supreme Court defined "the maker of a statement [as] the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302.

Prousalis argues that, under *Janus*, "an adviser [such as himself] cannot be held liable under Section 10(b) of the Securities Exchange Act of 1934, codified at *15 U.S.C. Section 78j(b)* . . . for statements made in a prospectus which the adviser participated in drafting, since an adviser is *not* the 'maker' of the statements." (Mem. Supp. § 2241 Pet. at 24.) Rather, "Busybox exercised ultimate authority and control over its IPO, including its Registration Materials, the

10

distribution of its prospectuses and its closing." *Id.* at 25.   Therefore, Prousalis concludes that, "only Busybox and its Officers and Directors are liable for the statements made in the Registration Materials or material omissions therefrom under 15 U.S.C. Section 78j(b)." *Id.*

The Court directed the United States to respond to Prousalis's § 2241 Petition.   The United States moves to dismiss arguing that "Petitioner is improperly seeking to extend constraints the Supreme Court has imposed upon private actions for securities fraud in *Janus* and other civil cases, to criminal prosecutions" and that Prousalis's § 2241 Petition is in fact an unauthorized successive § 2255 Motion.   (Mot. Dismiss § 2241 Pet. 6–7, 10–11.)   For the reasons stated below, the Court will GRANT the Motion to Dismiss.

## III.   ANALYSIS

*Janus* involved a private civil action under Securities and Exchange Commission Rule 10(b)–5, brought by shareholders of an asset management firm against the firm and its investment adviser, a wholly-owned subsidiary, alleging false statements in the prospectuses. *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299–30 (2011).   The Supreme Court determined that the investment adviser cannot "be held liable in a *private* action under . . . Rule 10b–5 for false statements included in its client mutual funds' prospectuses" because "it did not make the statements in the prospectuses." *Id.* at 2299 (emphasis added).   The Supreme Court determined that "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Id.* at 2303.   Thus, the Supreme Court concluded only the asset management firm who retained ultimate control over the prospectuses made the statement in the prospectuses. *Id.* at 2305.   The Supreme Court explained that its restrictive interpretation of Rule 10b–5 "accords with the narrow scope that we must give the implied *private* right of action." *Id.* at 2303 (emphasis added); *see id.* at 2302

(emphasizing that "'[c]oncerns with the judicial creation of a private cause of action caution against its expansion'" (alteration in original) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008))). In discussing the limited private right of action under Rule 10b–5, the Supreme Court analogized the investment adviser to a "speechwriter," who "may have assisted [the asset management firm] with crafting what [the asset management firm] said in the prospectuses, [the investment adviser] itself did not 'make' those statements for purposes of Rule 10b–5." *Id.* at 2305.

The *Janus* decision stemmed from a line of decisions limiting judicially created private causes of action. *Janus* involved no discussion of criminal liability for securities fraud. As explained below, *Janus* fails to diminish Prousalis's criminal liability for aiding and abetting in committing securities fraud.

In *Janus*, the Supreme Court explained that its earlier decision, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), which limited aiding and abetting liability in private civil actions under Rule 10b–5, compelled the result in *Janus*. *Id.* at 2302. In the *Central Bank of Denver* decision, the Supreme Court emphasized that criminal liability for violating the Securities and Exchange Act is broader than civil liability for judicially created "implied causes of action" under that statute. *Id.* at 191. The Supreme Court recognized the continued existence of criminal liability for aiding and abetting in a violation of the Securities and Exchange Act, but it refused to extend aiding and abetting to implied civil causes of action. *Id.* at 190–91. The Supreme Court reasoned that, "while it is true that an aider and abettor of a criminal violation of any provision of the 1934 Act, including § 10(b), violates 18 U.S.C. § 2, it does not follow that a private civil aiding and abetting cause of action must also exist." *Id.* at 190. Thus, a reading of *Janus* in conjunction with *Central Bank of Denver*

12

demonstrates that the Supreme Court had no intention of limiting criminal liability for securities fraud violations in *Janus*.  Instead, the Supreme Court expressed its concern with expanding an implied civil cause of action.  Thus, after *Janus*, aiding and abetting in the making of false statements in registration materials remains a crime.

Prousalis directs the Court to no authority or persuasive argument that indicates that either *Central Bank of Denver* or *Janus* have any applicability to Prousalis's criminal convictions.  Even if the Court found Prousalis's argument persuasive that under *Janus* he no longer qualifies as a "maker" of the false statements because he lacked ultimate authority over them, Prousalis ignores the fact that he also pled guilty to conspiracy to commit securities fraud (Count One), and aiding and abetting securities fraud by causing materially false statements to be made in the IPO registration materials (Count Two), and aiding and abetting in failing to disclose his interest as counsel in IPO registration materials (Count Three).[19]  Prousalis's conduct for aiding and abetting securities fraud (Count Two) and aiding and abetting in failing to disclose his interest as counsel in the registration materials (Count Three) remain criminal.

---

[19] Prousalis contends that he "was never charged with 'aiding and abetting,' [and] never pled guilty to 'aiding and abetting'" (Opp'n Resp't's Mot. Dismiss 6–7 (ECF No. 6)), "was *not* adjudged guilty of mail fraud . . . and wire fraud," and "was not adjudged guilty of failure to disclose interest of counsel." (Supp'l Opp'n Mot. Dismiss 10 (ECF No. 8)).  The record refutes these assertions.  The Superseding Indictment clearly charged him with aiding and abetting, pursuant to 18 U.S.C. § 2 in Counts Two and Three, wire fraud and mail fraud, pursuant to 18 U.S.C. § 1341 and 1343 in Count One, and failure to disclose interest of counsel, pursuant, in part, to 17 C.F.R. § 228.509 in Count Three. (Mem. Supp. § 2241 Pet. Ex. 12. ¶¶ 31–32, 35–38).  Prousalis completely ignores that his Plea Agreement expressly stated that Prousalis agreed to plead guilty to "Counts One, Two, and Three of the above-referenced Indictment." (*Id.* Ex. 13, at 1.)  Thus, the Plea Agreement and Judgment incorporate the aiding and abetting, wire fraud and mail fraud, and failure to disclose interest of counsel charges named in the Superseding Indictment. *United States v. Evans*, No. 93–8816, 1994 WL 558986, at *1 (5th Cir. Sept. 22, 1994).

13

Moreover, for the conspiracy to commit securities fraud charged in Count One, the *agreement* to violate the law and not the actual substantive violation constitutes the criminal act. *See United States v. Mills*, 995 F.2d 480, 484 (4th Cir. 1993). Here, Prousalis agreed with Kirk to make and cause the making of various misstatements and omissions in connection with the Busybox IPO. *See Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR 1509, 2007 WL 2438422, at *1 (S.D.N.Y. Aug. 24, 2007). Prousalis remains guilty of conspiracy to commit securities fraud regardless of whether he ultimately "made" the false statements and representations in the IPO registration materials.[20]

## IV.   CONCLUSION

Because Prousalis fails to demonstrate that the substantive law changed making his conduct of conviction no longer criminal, Prousalis demonstrates no inadequacy or ineffectiveness of the remedy provided by § 2255. Accordingly, Prousalis's § 2241 is an unauthorized, successive § 2255 Motion and will be DISMISSED for want of jurisdiction. Prousalis's Motion for Leave to File Subpoenas (ECF NO. 9) will be DENIED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

---

[20] In Count One, Prousalis also pled guilty to conspiracy to commit mail fraud and wire fraud pursuant to 18 U.S.C. §§ 371, 1341, 1343, and 1346. Prousalis fails to demonstrate how *Janus* applies to his convictions of mail and wire fraud, both general criminal fraud offenses not specific to securities fraud. The elements of conspiracy to commit mail or wire fraud require no violation of securities law. For mail fraud, the United States must generally prove that a defendant knowingly participated in a scheme to defraud using false statements, representations or omissions, acted with the specific intent to defraud, and that the defendant mailed something for purposes of carrying out that scheme. *See* 18 U.S.C. § 1341. For wire fraud, the United States must prove the same elements as mail fraud, except the defendant must have used interstate wire communications facilities for the purposes of carrying out the scheme. *See* 18 U.S.C. § 1343. Thus, Prousalis's convictions for conspiracy to commit mail fraud and wire fraud remain unaffected by *Janus*.

§ 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Prousalis fails to satisfy this standard.  A certificate of appealability will be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

And it is so ORDERED.

Date:  3/19/13
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge